We'll call the matter of Chavez-Sanchez versus the Attorney General of the United States. And we have Mr. is it pronounced Menard? Yes. Mr. Menard. Good morning, Your Honor. Chief Judge, and may it please the court, my name is William Menard and I represent the petitioner in this case, Fabiola Chavez-Sanchez. I respectfully reserve two minutes for rebuttal. Thank you. Ms. Chavez-Sanchez. Could I just start you off? Because this, I mean, this is what only I raise this at this point, my colleagues can and will raise their concerns. But here's what struck me about this case in the very start. And from my standpoint, it's what I'm most interested in. And that is the government has contended, and this is a quote, it appears that the board implicitly rejected Chavez-Sanchez's argument for equitable tolling. Now, I'll certainly ask the government why it appears to them that that is the case. But first of all, to you, did the BIA implicitly reject equitable tolling? If so, or if not, how do we go about determining what a board does, what the board does implicitly, especially in the wake of numerous cases in our immigration jurisprudence where we have required IJs and the board to more explicitly take on a resolution of issues that have been raised? Your Honor, I know that sounds like something of a softball, but it is softball. It is my job. Well, I have to be candid. This is my concern about this case from start to finish. I think you took the exactly what I was going to say, right? He didn't share this beforehand. No, that's yes. Sure. I mean, this this goes to the heart of our review in any case, really. Yes, Your Honor. Absolutely. The one of the primary arguments here is that the BIA completely failed to address whether the petitioner's motion to reopen was subject to equitable tolling or whether the acquittal on all criminal charges constituted a change in circumstances warning reopening. But on the issue of equitable tolling, no, the term equitable, the term tolling were not mentioned in the in the decision whatsoever. The BIA simply stated that the that the that the motion was untimely. There was absolutely no explanation as to why it was why it was not subject to equitable tolling. So the short answer is they provide no explanation. There is no ruling. Thus, there is no way in which this court could review the propriety of the decision because there was no actual decision on that on that issue whatsoever. Now, it may be that and I certainly don't mean to put words in her mouth, but it may be maybe I can anticipate that Miss Singer will take the podium and and say to us, well, you know, it's our contention and I believe they suggested this in their brief that equitable tolling has never been granted or resorted to in a factual context or a panoply of facts and circumstances similar to this one. And again, that may be the case. Is that enough for purposes of our review? No, Your Honor, the the simple fact here is that this court has late has has ruled that that the that the time to file a motion to reopen is subject to equitable tolling and it's set out and it's set out on numerous occasions both within and not, you know, outside the immigration context that equitable tolling exists where there's sufficiently inequitable circumstances such that principles of equity would make the rigid assumption that equitable tolling is subject to equitable tolling. It's a rigid application of a time limit, a time limitation, period, unfair. There's simply no ruling on that issue in this decision that was approximately one page long. There's no ruling on that. The your honor's the petitioner submitted substantial evidence as to why what caused this very brief delay. The the change in circumstances occurred five days before the due date. Let's jump. I mean, in all fairness, though, your client has really got some tough sledding ahead, doesn't she? Even if you were to prevail on equitable tolling, are you referring to whether she's prima facie eligible? Yes. OK. Yes. So that was yes, that is another there's an enormous amount of discretion, ultimately, that the government has here. Right. Yes. The BIA does have a significant amount of discretion as to what would constitute essentially what would constitute extremely unusual hardship in this case. So that's really an issue here. The BIA found that even if this case were to move forward on the application for cancellation of removal, that the petitioner is unlikely to succeed on the merits of that argument. And but the problem here, your honors, is, again, the BIA said in its decision that there was, quote, no evidence presented of hardship. That's simply blatantly not true. There were at least over 200 pages of evidence presented in this in the motion to reopen, which went into why there would be a hardship in this case. She presented the petitioner presented a financial documentation to show that the financial hardship. She presented early intervention services report showing that there were developmental delays with the child. Presented affidavits from families and friends, evidence regarding safety concerns back in Mexico of, you know, which is where she would be deported to. And presented evidence that the Montgomery County Office of Children and Youth has emphasized that its goal is to reunify her son with her. And in fact, your honors, I would just like to point out, because this came out during the pendency of the appeal, the petitioner has told me that she has, in fact, gained full custody. So the BIA, the charges were acquitted and she has regained full physical and legal custody. She works part time while her son is in his first, excuse me, first year of school. And while her husband works and then she takes care of the son the rest of the time. But the developmental delays are continuing, that she continues, that the son continues to receive special assistance from his school. Not to mention all the financial and other factors that were discussed. So the only reason, in fact, that the BIA mentioned that she would not likely succeed on the merits is because she didn't have physical custody of her child. And it wasn't clear she was going to regain it. That's the only evidence that the BIA cites in reaching that decision. So at this point, that's not even true anymore. But even if you go on the evidence that was submitted to the BIA at the time, I just discussed a significant amount of evidence that would show that there was substantial, that at least there is a prima facie case here of substantial hardship. You know, the BIA. How old is the son now? Sorry, what? How old is the son now? How old? Oh, how old, the son is four. The BIA held in matter of Montreal that it set out the factors to be considered for a cancellation or removal case. It considers the ages, health, and circumstances of the qualifying relatives, in this case, the U.S. citizen's son, which could include a qualifying, you know, very serious health issues, compelling special needs in school, as well as lower standards of living or adverse country conditions in the country of return. And the BIA explicitly said all hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship. None of that is done here. There is no mention of any of this evidence that was filed to the BIA. It simply said she currently doesn't have full legal custody. Let me ask you a threshold issue. The government, I'm assuming, is going to argue that we don't lack jurisdiction. We functionally have no jurisdiction here because of the very discretionary nature of the sua sponte motion to reopen. What do you make of our jurisdiction here? Well, so the jurisdiction comes down to two issues. One would be the fact that if this court or either remanded or ruled on the issue of equitable tolling, the motion would be timely filed, and thus it wouldn't be a sua sponte motion. So our primary argument is that this is timely under the principles of equitable tolling. But even if this court rules that it isn't, this court has the ability to exercise jurisdiction over cases when the BIA has exercised its sua sponte authority to determine whether the correct legal framework has been used to make that decision. And here there just isn't any. There's no legal framework as to how it reached the decision that first, that there wasn't a change in circumstances. The fact that her acquittal on criminal charges, which were previously pending, wasn't a change in circumstances. And the other being that what we just discussed, that she's prima facie eligible for relief. The BIA didn't analyze any of the Montreal factors. They didn't discuss, really there's no explanation as to why she's not prima facie eligible for relief. So because this court can review whether they use the proper legal framework in making that decision, this court has jurisdiction to review that matter. And clearly here, that is not, that hasn't happened. In going specifically to the issue in the change in circumstances. So the BIA, the only issue that it seemed to address at all in the opinion is whether there was a sufficient change in, or the fact that, I take that back. The only thing they discussed is that she was eligible theoretically by statute to apply for the relief at the time of the trial. That was their position. So she should have filed the motion earlier or she should have filed the application, continued with the application at the time of the trial. But the BIA doesn't address at all why the acquittal on her criminal charges was not a fundamental change in circumstances. The reality is she was charged with endangering the welfare of a child. This was the child that she would have to prove was. What would be, what would the impact of acquittal be because of the beyond a reasonable doubt standard in a criminal prosecution? Government with the prosecution, I say the commonwealth fell short. What should that have by way of effect ultimately on her eligibility for cancellation? Yes. So at the time of the trial, the she had a pending charge of endangering the welfare of her child, her own child, which is a child that she would have been charged with proving would suffer a hardship if he if she were deported. Well, at that point, the only the only evidence would essentially be her word and a police report, which the government would have certainly asked her about at the time. Once there was an acquittal and there was a judicial decision saying she was not guilty of these offenses, that fundamentally changed the the course of the of the of her. That changed in practical terms what she was eligible to buy and we don't get that. I'm guessing what the question is getting at is perhaps the board would take the view that, well, the fact that it couldn't be proven beyond a reasonable doubt is really irrelevant. We're concerned with whether or not extenuating extreme circumstances have been shown here. And we're not so convinced that there'd be an extreme hardship, even though there wasn't an acquittal, if the mother was allowed to remain to raise the child. In fact, looking at the evidence before us, speaking at the BIA, it may well be that the child would be better off if the mother was acquitted. They could certainly take that position, notwithstanding the acquittal. I'm not advocating that position. I'm just suggesting that's the thrust of what we might be concerned about here. So, Chief Judge, I see my time is up, but you can you can certainly answer the question and then I'll ask Judge Restrepo if he has any further questions. Of course. Yes. So the the issue, Your Honor, is not that the the BIA or the immigration judge at some point or couldn't have considered all of the evidence. You know, if they'd gone forward with the trial, they obviously would have listened to her testimony as well on top of the police reports and, you know, the fact that there were pending criminal charges. But the fact remains that there is no doubt that the fact that she was charged with a serious offense that which related to the person that she was trying to prove a hardship to impacted the the nature of this case. It's not that it would be outcome determinative. The purpose of a motion to reopen is to show that there has been a change in circumstances that would that would allow or enable the person to to reopen the case and try the case under these new circumstances. But the but the reality is the BIA never addressed any of this. It just simply denied it simply denied the motion and without any explanation. Judge Restrepo, we'll be having you back on rebuttal, Mr. Menard, thank you. Indeed, it seems based upon your representations here that there have been even greater changes in circumstances than when the briefs were filed in the case. So we'll hear from Ms. May please the court. My name is Jennifer Singer and I represent the United States Attorney General. The respondent in this matter, Ms. Singer, I've already telegraphed, I guess, to some extent, my concerns in this case and at the very least, putting aside the change in circumstances, Mr. Menard has brought to our attention. They had to do really with the quality of the BIA adjudication and the lack of what I would consider a sufficient explanation. In fact, a failure to address really at all an important aspect that is an issue that was raised. And you, I believe, have contended, and I can't remember exactly where this is in your brief, but I think you have suggested either that the BIA wouldn't have granted equitable tolling here if it had considered the merits or that it was extremely unlikely. I'm curious as to why that was your position or why that is your position, especially because an equitable tolling request, and its ultimate determination is clearly based on a totality of circumstances, or at least it's a very fact-specific determination. I agree with all that. And the government acknowledges that the board did not expressly discuss or consider the equitable tolling argument. But you've gone farther than that. You've said that the board implicitly did. That's correct. And we have an affirmative defense to the equitable tolling and a more defensive defense to the equitable tolling argument. And the affirmative is I believe that it was implicit rejection of the equitable tolling argument because the board found that the motion was untimely. And I don't think it necessarily had to address something that in this circuit or in the board's jurisprudence that the circumstances that petitioner identified here have never been found to form a basis for equitable tolling. Equitable tolling has only been found to apply in circumstances of fraud, deceit, ineffective assistance of counsel. But you know, in Cruz versus the Attorney General, we said, and I don't recall that this was in the equitable tolling area. But what we said, an implicit finding is not a substitute for the kind of analysis required for us to provide meaningful review of the BIA decision. I mean, I think if the board addressed it, they would have just said equitable tolling does not apply here, which is not. You think they would have. Well, I think, but that's what I think. It's an implicit, just given the nature of where equitable tolling has been found to apply. And this is so far from any of those circumstances. I think implicit in the board's untimeliness finding is that equitable tolling does not apply here. But even aside from that, if this court were not to agree and find that the court did not and should have addressed the equitable tolling argument at the end of the day, that does not really matter because remand for more of an elaborate discussion on equitable tolling is, but the error is that even if equitable tolling were to apply and the motion to reopen were effectively deemed timely, the petitioner would still have to show prima fascia eligibility for relief. And that is not what happened in this case here. And that would bring me to my second point, and the prima fascia finding is dispositive of the case. So any error that the board may have made with respect to not expressly considering the equitable tolling argument is rendered harmless because of the prima fascia finding. Before we go forward on that, you would agree, would you not, that we have an institutional interest in assuring that we receive an adjudication from the BIA, from any tribunal really, whose decision we review, assuring us that it is specific enough, detailed enough, explicit enough to perform the review that we necessarily must perform? I agree with that. But in the circumstances given here, the factors that the petitioner presented are so, they've never been found to be sufficient to have equitable, to be a basis for equitable tolling. They've never been found not to be sufficient. Maybe the case has never come up before. And from my surveying of the Third Circuit case law, applying equitable tolling, I have never seen these circumstances come up or equitable tolling applied to that. Exactly. And in fairness to your position, your adversary has not pointed this to any cases either. So I neglected to ask him that. But we are in a kind of uncharted territory here. But doesn't it seem reasonable to you that the petitioner would have taken the action she did earlier or that her counsel would, given the pendency of this prosecution? The action of what? What action are you referring to? The action of withdrawing the motion earlier. I mean, I don't know what underlied that decision. I mean, this court and the board have found that it was tactical and strategic. There might have been other, I don't know what the petitioner and her attorney at that point discussed. There could have been other things going on. But prosecution hanging over her head for child abuse. It's correct. But I mean, another alternative was counsel asking for a continuance of the court case to see what happens to the pending, the pending charge. I mean, there was other avenues for the counsel before the immigration judge to take. So I'm not going to surmise why this counsel elected to do, to withdraw with the blessing of petitioner, because on the record, they counsel admitted that they discussed whether it was discussed with petitioner and petitioner agreed to it. So I don't want to surmise. Isn't that pairing things a little thin, the difference between withdrawing, the difference between continuing? You don't you don't think so? No, I think counsel and an alternative to withdraw was counsel before the immigration judge could have asked for a continuance to see the outcome or the resolution of the conviction of the criminal case that was pending. That was an avenue that could have been taken and that was not taken. What if the continuance had been denied? Then petitioner could have appealed that. And I mean, this is all conjecture because that's not what happened. And the appeal could have appealed the denial of a continuance. Yes. And that appeal could have been before the board. And now here we are, three decisions later on a motion to reopen. I mean, that could have all been litigated before. And in conjunction with the appeal to the board after the proceedings, there was also a simultaneous motion to remand. All these things also could have been raised in the motion to remand in the previous go around and none of those issues were raised here. Again, regardless of the equitable tolling issue, whether this panel thinks that the board should have been more fulsome in its discussion of the issue. At the end of the day, that error is harmless because this prima facie finding by the board is dispositive of the entire case. Because even if timely, even if the equitable tolling principles applied, the petitioner still would have to show prima facie case for eligibility for cancellation of removal. And that was not done here. And wouldn't she be able to at least make a very strong argument now that soon she has custody, that she now has custody of a four year old U.S. citizen? Why wouldn't that be? I would hope that the board would want to know that and would weigh that pretty heavily. I mean, that's up to petitioner to file probably another motion. But we look at the evidence that was before the board at the time and before the board. My question, the question is, why wouldn't the board, you sounded like, well, we'll go back to the board and he's going to lose, he'll make his argument, he's going to lose. And knowing what I've read about the board decisions, you may well be right. But let's assume we're in the best possible world where the board would really care that you got a four year old kid here who's going to now be either deprived of his mother's upbringing or be shipped off to Mexico along with his mom, not speaking any English. I'm not sure I'm following what the question is. No, you're making it sound like, well, no big deal, could have raised it before the board. And I'm saying I would think that the board would want to know it. And if that's the case, it would be a material change in the circumstances. The fact that she now has custody of the son. Right. But that during the process of the motion to reopen the evidence before the board, the petitioner did not have custody of her son. This is all new information. We know that. But I mean, doesn't this seem to you to be a big deal that custodial arrangements have changed profoundly? I mean, that is all new information to me, but it's not my point. That's the point. But it's now the burden to go before the board and say, look, this is what happened. This is all new information and we're defining a decision that happens when the facts and circumstances were different. Could you say that again? It's just his burden. To now go before the board and say, hey, this is what happened. I now have custody of this child. I think that's what she's trying to do. I mean, I have no power to do anything about this at this juncture. Petitioner has the burden to go before the board and ask for some kind of relief. I take you for your word at that, but that's a pretty sad commentary on this process that we are here with such a huge change in the custodial situation of this child. And we're hearing that it might change the game. But in the course of saying that earlier, he should have asked for a continuance rather than withdrawing a motion. Now the petitioner can file a new petition and it's up to him to do that. Meanwhile, the custodial change has taken place and this matter stands in limbo. I mean, maybe I am just missing something that is terribly, terribly obvious here. But that just doesn't make a lot of sense to me. I'm missing it too. It's the process. This is information the petitioner holds himself. The board doesn't know it and the government doesn't know it. But so now it's his opportunity to go before the board and say these things have changed. That's what he's asking to do. But he can't do it now because it's been dismissed. He can't get back before the board unless the board agrees to be open. Remember I'm missing something? How can you go back before the board unless the board agrees to reopen the matter? You're saying, oh, go back before the board. It's not that simple. Great. But I mean, I don't want to surmise what the board will do with all this new information. But clearly the circumstances are very different than what was presented to the board in the decision that we're defending now. Exactly the point. That is exactly the point. You're making his argument. But that doesn't mean at the time the board's decision that is what I'm defending now was not incorrect. What would happen if, let's assume there's no reason to think otherwise, that the child and the mother had been reunited? What would happen if the government withdrew its opposition to having the petitioner go before the board? I mean, that's something that I could reach out to ICE counsel and see if that's a possibility. Is that a possibility? It's a possibility, yes. But again, is it a possibility the government would be willing to entertain? It's something the government would be willing to entertain. But this is all new information to me. I have no idea this counsel could have reviewed. We understand that. We understand that, Ms. Singer. And this is certainly not personal to you. Please understand. And I will have a question of Mr. Menard when he gets back up on rebuttal. But it would seem to me that even before the change in circumstances we have been alerted to today, the government could have taken the position, well, you know, this issue of equitable tolling is not governed by a decision of this circuit going one way or another. We could just skip by that and let the matter go forward and be determined on the merits anyway. And that's how I was looking at this case, even if it would not have required me to rule that way, just looking at it practically. But things have now changed drastically in terms of the mother-child relationship. So if, in my view, it could have been and maybe should have been done before, it sure ought to be done now. I mean, that is something that we would entertain. I mean, this would have to have discussions going forward. But could we leave here today with our panel determined to render a decision in due course, but under the understanding that you would go back to your superiors and discuss within this change of circumstances, which I know is new to you, it's new to us, and see if this matter could at least go forward? I mean, that's something that the government is willing to entertain. I'm happy to have conversations with counsel and DHS and see what can be done about this case. But, I mean, the decision at hand... We stand there. There's no need to, after that, if anything after the but, throw it out. That's all you need to say, because the case is in limbo and you want to continue to make legal argument. It's not necessary. It's not necessary. I'm reminded of a property professor I had in law school who was giving the example of a bunch of first day law students. What do you do with someone trespassing on your property and all this? And everybody said, oh, you bring an action of trespass, you bring an action of nuisance. He says, no, you put up a fence. And maybe it's that simple, rather than getting into all the legal intricacies. You just decide with whomever you have to talk to about whether or not this thing can't be resolved, at least procedurally resolved, by agreeing to let it go back to the board. Point taken, but just to say whether this panel thinks that the mechanisms that are in place are unfair. I mean, those are the mechanisms in place. They are what they are. So but given that, I'm happy to go back. I don't know what my colleagues think. Even if we thought, even if I thought that you have a golden opportunity, you have a golden ticket here, not to the chocolate factory, but you have a golden ticket to perhaps remedy something that at least I think on the face of it is not as fair as it could be. You have an opportunity to to go back to your folks. I know it's not your final call, but at least have a discussion. Look, this mom now has custody of the four-year-old. I would assume the OIC would have done a pretty thorough investigation about her suitability to have custody of the child before they let her have custody of the child. There's obviously another person involved here. And that's maybe something the BIA would want to know and would consider and think, well, OK, we'll grant her cancellation. Maybe not, but maybe so. No, and as I've indicated, I'm happy to go back and have conversations with counsel and DHS and see what can be done going forward. No, good. That's it. No, but period. No, but that's great. We appreciate that. I will rest. Let's let's leave it at that from a government standpoint for now. And I would like to hear from Mr. Menard, but I would like to begin by asking him several. We don't go. It's bad enough. We don't want a personal injury issue on our hands here. The mask blocked my view. Did you communicate this information to Miss Singer or anybody with the agency? Your Honor, the this is something it is susceptible of a yes or no. It really is a big yes or no. The whether she regained full custody, I did not. I just learned about that. But so, no, I didn't tell Miss Singer that she has regained full custody. The evidence regarding whether the same thing to you, Mr. Menard, that formed a question, I asked Miss Singer, don't you think that is a profoundly big deal? Yes, Your Honor, it is. It's about human beings. Yes, absolutely. And the client and her child. Yes, Your Honor, that is true. We did in our motion. This has been a this has been a rapidly developing case in a situation in which we filed a motion to reopen. Subsequent to the motion to reopen, you know, the BIA took a significant amount of time to make a decision. During that time, she was first in detention, was released from detention, has been working with the Office of Children and Youth. We submitted evidence to the BIA that she has been that the Office of Children and Youth has the goal of reunifying with her and was working with her even before the criminal charges were over. But certainly after we knew that this panel that's in your brief. Yeah, right. OK, so since since the fact that was the last time which we could have submitted new evidence, new evidence in the case to the BIA was when we submitted the motion to reopen, the BIA doesn't doesn't accept new evidence until the filing. You're talking about submitting evidence and motions and all this really good technical legal stuff that I get paid for. You pick up the damn phone. Say, Ms. Singer, my client just reunited with her son, has full custody now. Is that something you'd be willing to take to your folks to see whether or not they would allow for or agree to remand? Ms. Singer strikes me as an eminently reasonable, very skilled attorney, very reasonable attorney. She wants to do the right thing here. She represents a client, Ms. Chavez, who wants to do the right thing. Maybe a mom herself, I don't know. But just pick up the phone and call. Yes, it's simple. Yeah. Well, Judge McKee, do you have any other questions? Just exasperation. No questions. Well, I'm accustomed to that, but it's often expressed in my direction. Judge Restrepo, do you have anything further? If I may, Your Honor, just one final thing. Very quickly. OK. Yes. The counsel mentioned that there were no such no circumstances in which the BIA or this court had granted equitable tolling in any circumstances other than that mentioned by the government. The BIA, in fact, in an unpublished decision, but in 2017, reopened the case for equitable tolling following a change in law that affected the non-citizen's eligibility for relief. So the BIA has before reopened the case simply because of a change in law, which was not one of the kind of, you know, reasons that Ms. Singer mentioned earlier as the only reasons they could grant equitable tolling. All right. Here's what I would would like to like to do. And I just briefly discussed it with Judge Restrepo. And I'll ask Judge McKee if this is satisfactory to him, because I think it's important to keep this matter on track. I would suggest that we should, notwithstanding the information we've just received, take the matter under advisement, while at the same time giving the parties the opportunity, indeed the admonition, that they consult with a view toward providing this panel with an answer within the next 20 days, what would that, where would that put us date-wise, the 20, this is what, the 22nd? October 12th, thereabouts. I guess, yes, October 12th, that we have an answer from you as to whether there is any resolution prepared of this matter. I would also indicate that there, depending upon what that resolution may be, this court may decide to enter a judgment. In the matter, together with supporting an opinion, or we may ask to hear further from the parties that will depend upon the information you provide us. But I think I speak for all three members of the panel when I say that this is certainly a considerable change in circumstances we've been alerted to today. I think it's regrettable that that change, that factual change, was not communicated previously to Ms. Singer. This is not a matter even that had to be telephoned. It could have even been mentioned prior to the argument today. We don't live in silos even in these days of COVID. But we are where we are right this minute, and that's what our expectation will be of the parties and of counsel here that we hear from 20, within 20 days, that is by October 12th, from you, as to whether or not you have agreed upon some course forward, either a resolution of this case or a procedural course to take going forward in this case. And if not, we will undertake to complete our duties in terms of the resolution of the matter. Judge McKee, do you have anything further? No, I don't. Thank you. Judge Restrepo, to the extent that you may be seated, don't trip this time. Next time. In any event, I trust that both of counsel realize that the vigor with which the panel has pursued this matter is only a reflection of the seriousness with which we regard this case in all cases, but also the seriousness with which we regard the change that has occurred here and its impact on the parties. And for that matter, on a mother and child. So without saying anything further, we'll anticipate that you go forward and have good faith discussions. And I'll say no further. So with that, I'll ask the clerk to please conclude the proceedings. You want to call me and myself? Yes. Can we call you in about 10 minutes, Judge McKee? Yeah. Thank you.